UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Land O'Lakes, Inc.,                                            Civil No. 13-1401 (PAM/FLN)

                   Plaintiff,

v.                                                 **MEMORANDUM AND ORDER**

Don A. Barry and
Jesus Roberto Gonzalez,

                   Defendants.

---

This Matter is before the Court on Defendants' Motion to Dismiss or, alternatively, to Transfer Venue and Plaintiff's Motion to Amend. For the reasons that follow, the Motion to Dismiss is denied, the Motion to Transfer is denied, and the Motion to Amend is granted.

**BACKGROUND**

**A.**     **The Parties**

Plaintiff Land O'Lakes, Inc. is a member-owned agribusiness cooperative based in Arden Hills, Minnesota. Among other businesses, Land O'Lakes distributes crop-protection products and agricultural seed in the United States and Mexico. In 1999, Land O'Lakes operated that business through a joint venture with CHS, Inc. In 2000, the joint venture became a separate company called Agriliance, LLC, which was based in Inver Grove Heights, Minnesota.

In 2005, Defendants Don Barry and Jesus Gonzalez began working for Agriliance's Mexican subsidiary, Agriliance de Mexico S.A. de C.V.; Barry was the Mexico Location

Manager and Gonzalez was the Mexico Operations Manager. (Am. Compl. (Docket No. 16) ¶ 9.) Prior to commencing their employment with Agriliance, Barry and Gonzalez each signed an Invention and Trade Secret Agreement ("ITA"), which contains a choice-of-law and venue provision designating Minnesota law as the governing law and Minnesota as a permissive forum for any suit relating to the agreement. (Id. Exs. A and B ¶ 7.)

In 2008, Land O'Lakes and CHS dissolved Agriliance, but Land O'Lakes kept the seed and crop-protection products aspect of the business. (Id. ¶ 13.) Agriliance assigned Defendants' ITAs to Land O'Lakes. (Id. ¶ 14.) In 2010, Gonzalez signed a new ITA with Land O'Lakes containing the same choice-of-law and venue provisions. (Id. ¶ 15, Ex. C ¶ 7.)

Land O'Lakes then formed a new company called Winfield Solutions, LLC, to operate the seed and crop-protection products business. (Id. ¶ 16.) Winfield's subsidiary, Winfield de Mexico S.A. de C.V. (formerly Agriliance Mexico), is responsible for business operations in Mexico. (Id. ¶ 17.) Land O'Lakes assigned Barry to work as Winfield's Director for Mexico and Gonzalez as Winfield Mexico's Sales Manager. (Id. ¶ 18.) Both Barry and Gonzalez are based in Texas.

According to the Amended Complaint, although Barry and Gonzalez worked for Winfield and Winfield Mexico, respectively, they were at all relevant times Land O'Lakes employees. (Id. ¶ 19.) Land O'Lakes alleges that it supervised them, evaluated their job performance, paid their salaries and bonuses, provided them with benefits, processed and paid their expense reports, and issued their W-2s. (See id. ¶¶ 5(a)-(e), 40.) Land O'Lakes

also asserts that Barry and Gonzalez had ongoing contacts with Minnesota in the form of regular telephone and e-mail communications; several trips to Minnesota for training and meetings arranged by Land O'Lakes' Minnesota travel agency; and the receipt of salary, benefits, and computer equipment from Minnesota. (Neely Aff. (Docket No. 22) ¶¶ 13-21.)

**B.     Underlying Acts**

Land O'Lakes alleges that Barry and Gonzalez engaged in the following misconduct during their tenures with Land O'Lakes.

### 1.     Sorghum-Seed Claim

In 2011, Gonzalez (on behalf of Winfield Mexico) purchased two varieties of sorghum seed from Advanta identified as "Silo Dulce" and "Reyna." (Am. Compl. ¶¶ 20-21.) Gonzalez distributed the seed to Mexican farmers, who were pleased with the seeds' performance. (Id. ¶ 21.)

In 2012, Gonzales decided to purchase seed from another vendor, Chromatin, Inc. (Id. ¶ 22.) Land O'Lakes alleges that Gonzalez knew that the Chromatin seed would not perform as well as the Advanta seed, and that Gonzalez attempted to mislead farmers by arranging to have some or all of the Chromatin seed mixed with other seed and re-bagged to indicate that it was Silo Dulce and Reyna seed. (Id. ¶¶ 23-26.) When approximately 90 farmers asserted claims against Winfield Mexico due to the seeds' poor performance, Land O'Lakes conducted an investigation and determined that the farmers' complaints were legitimate. (Id. ¶ 28.) In November 2012, Land O'Lakes settled the claims for $2.9 million. (Id.)

### 2.     Corn-Seed Claim

In 2012, Gonzalez purchased corn seed on behalf of Winfield Mexico from Global Seed Genetics, S. de R.L. de C.V. (Id. ¶ 29.) AgriBio Tech Mexico tested some of the seed and returned it to Winfield Mexico after determining that it had a poor germination rate. (Id. ¶¶ 29-30.) Rather than destroying the poor performing seed, Gonzalez mixed it with other seed, re-bagged it, and sold it to Mexican farmers as good seed. (Id. ¶ 31.) The farmers who ultimately purchased the seed discovered that it had a poor germination rate, among other problems, and asserted claims against Winfield Mexico. (Id. ¶ 32.) Land O'Lakes conducted an investigation and, after determining that the claims were valid, settled with the farmers for $228,942. (Id. ¶ 33.)

### 3.     Improper Vendor Payments

Some of the vendors used by Winfield Mexico offered rebates, sales incentives, and other bonuses based on annual purchases. (Id. ¶ 34.) Land O'Lakes alleges that Barry and Gonzalez split those vendor payments rather than tendering them to Winfield Mexico, as required by Land O'Lakes' Code of Conduct and Business Ethics Policy. (Id. ¶¶ 35-36.) Barry and Gonzales have admitted to improperly taking vendor payments in the amount of $17,137, and Land O'Lakes alleges that discovery will yield a number far greater than that. (Id. ¶¶ 37-38, Exs. D and E.)

### 4. Expense Account Misuse

Land O'Lakes also alleges that Barry and Gonzalez used their business accounts for personal expenses, i.e., daily lunches, vacation rentals, home cable and Internet bills, and that Land O'Lakes reimbursed them for those improper expenses. (Id. ¶¶ 40-43.)

## C. Claims

Based on the above alleged misconduct, Land O'Lakes has brought several claims for relief. Count I alleges common-law indemnity and seeks indemnification from Gonzalez for the more than $3 million in the settlements with Mexican farmers; Count II alleges negligence by Gonzalez based on the sorghum seed and corn seed mislabeling; Count III alleges conversion by Barry and Gonzalez based on the vendor payments; Count IV alleges breach of the ITAs by Barry and Gonzales; Count V alleges common-law fraud by Barry and Gonzalez; Count VI alleges breach of the duty of loyalty by Barry and Gonzalez; Count VII alleges aiding and abetting relating to the foregoing claims; and Count VIII alleges civil conspiracy. Land O'Lakes seeks money damages in excess of $3 million.

## DISCUSSION

Defendants seek dismissal of the action on various jurisdictional and substantive grounds. Failing that, Defendants contend that 28 U.S.C. § 1404(a) warrants transfer of the case to the Southern District of Texas, McAllen Division.

## A. Standing

The doctrine of standing limits the Court's jurisdiction to "those disputes which are appropriately resolved through the judicial process." Lujan v. Defenders of Wildlife, 504

U.S. 555, 560 (1992). To have standing under Article III of the Constitution, a plaintiff must demonstrate the existence of an actual case or controversy by showing (1) a concrete injury in fact, (2) that is fairly traceable to the challenged action, and (3) that is likely to be redressed by the relief sought. Id. at 560–61.

Defendants contend that Land O'Lakes lacks standing to bring the claims relating to the sorghum- and corn-seed sales because those claims belong exclusively Winfield Mexico. Defendants cite to numerous cases in support of the proposition that a parent company does not have standing to sue when its subsidiary sustained the harm at issue. (Defs.' Supp. Mem. at 2-3.) Those cases are inapposite. Land O'Lakes does not base its standing on an indirect injury suffered by Winfield Mexico; rather, Land O'Lakes alleges that it was directly harmed by Gonzalez's sorghum- and corn-seed sales because it—not Winfield—paid $2.9 million to settle the farmers' claims. (See Am. Compl. ¶ 28 ("Land O'Lakes conducted an investigation and determined that the farmers' claims were substantiated. In November 2912, it settled the claims for the aggregate sum of $2.9 million."). Based on the allegations in the Amended Complaint, Land O'Lakes has standing to sue Gonzalez for his alleged conduct in selling sorghum and corn seed in 2012.

Out of what appears to be an abundance of caution, Land O'Lakes recently moved to amend its complaint to include recently obtained assignments from Agriliance, Winfield, and Winfield Mexico relating to claims arising out of Defendants' conduct. (Docket No. 24.) Magistrate Judge Noel denied the motion, in part, due to the pending dispositive motion before the Court. (Docket No. 40.) Land O'Lakes renewed its request to amend during the

hearing on the instant Motion. Although the Court does not believe that such an amendment is necessary to confer standing on Land O'Lakes, it will grant the motion to amend and allow the assignments to be incorporated into the Amended Complaint. This will allow the case to proceed without the distraction of future standing arguments.

**B.      Jurisdiction**

Defendants next argue that Land O'Lakes fails to meet two jurisdictional requirements: the amount in controversy and personal jurisdiction. See Fed. R. Civ. P. 12(b)(1) and (2).

**1.      Amount in Controversy**

Defendants contend that Land O'Lakes cannot meet the amount in controversy requirement without the sorghum- and corn-seed claims because the Amended Complaint does not provide sufficient specificity as to damages relating to the other claims. As discussed above, however, Land O'Lakes has standing to bring the seed claims, each of which alleges damages well above the amount in controversy requirement. The jurisdictional amount therefore is met.

**2.      Personal Jurisdiction**

In a Rule 12(b)(2) Motion, the Court must examine whether the nonmoving party has established a prima facie case of personal jurisdiction. The Court must base its determination on written submissions in the light most favorable to the nonmoving party. Stanton v. St. Jude Med., Inc., 340 F.3d 690, 693 (8th Cir. 2003) (citation omitted). The Court can exercise personal jurisdiction over a nonresident defendant if (1) Minnesota's long-arm statute, Minn.

Stat. § 543.19, is satisfied; and (2) the exercise of personal jurisdiction does not offend due process. Id. Because Minnesota's long-arm statute extends the personal jurisdiction of Minnesota courts as far as due process allows, see e.g., In re Minnesota Asbestos Litigation, 552 N.W.2d 242, 246 (Minn. 1996), the Court need only evaluate whether the exercise of personal jurisdiction comports with the requirements of due process. Guinness Import Co. v. Mark VII Distribs., Inc., 153 F.3d 607, 614 (8th Cir. 1998).

Due process requires that Defendants have "certain minimum contacts" with Minnesota "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). Sufficient minimum contacts exist when the "defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). There must be some act by which the defendant "purposefully avails itself of the privileges of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958). In contrast, contacts that are merely random, fortuitous, attenuated, or that are the result of "unilateral activity of another party or a third person" will not support personal jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).

The Eighth Circuit has established a five-factor test to determine the sufficiency of the defendant's contacts: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relation between the contacts and the action; (4) the forum state's interest

in the litigation; and (5) the convenience of the parties. Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 648 (8th Cir. 2003). The third factor distinguishes between specific and general jurisdiction. Digi-Tel Holdings, Inc. v. Proteq Telecomms., 89 F.3d 519, 523 n.4 (8th Cir. 1996). "Specific jurisdiction can only be found if the controversy is related to or arises out of the defendant's contacts with the forum state." Johnson v. Woodcock, 444 F.3d 953, 956 (8th Cir. 2006) (quotation omitted). In contrast, general jurisdiction requires a showing that the defendant's contacts with the forum state are "continuous and systematic even if there is no relationship between the contacts and the cause of action." Id. (quotation omitted).

Defendants contend that the nature, quality, and quantity of their contacts with Minnesota are minimal and insufficient to confer jurisdiction. The record belies this contention. From January 2010 to August 2013, Defendants were employed by Land O'Lakes, a Minnesota company.[1] (Neeley Aff. (Docket No. 22) ¶¶ 9, 30.) Land O'Lakes provided Defendants' salaries, bonuses, and benefits from Minnesota, and Defendants connected their Land O'Lakes-issued computers to the network in Minnesota. (Id. ¶¶18-21.) Defendants reported to a supervisor in Minnesota and had regular contact with him via telephone and e-mail. (Id. ¶ 14.) In a two-year period, Defendants traveled to Minnesota several times for national sales meetings, training seminars, and other work-related meetings. (Id. ¶¶ 15-17, Ex. D.) In cases with comparable facts, the Court has found that the

---

[1] Before that time, Defendants were employed by related entity, Agriliance, which was also a Minnesota company. (Id. ¶¶ 5-6.)

defendant's contacts with Minnesota favored a finding of personal jurisdiction. See West Publishing Corp. v. Stanley, No. 03-cv-5832, 2004 WL 73590, at *4-5 (D. Minn. Jan. 7, 2004) (Tunheim, J.); Stratasys, Inc. v. Kennedy, No. 06-cv-5131, 2007 WL 1114321 (D. Minn. Apr. 13, 2007) (Magnuson, J.).

In addition to the foregoing contacts, the ITAs included Minnesota choice-of-law and forum-selection clauses. Such clauses can be "an important factor" in determining whether a defendant purposely purposefully invoked the benefits and protections of a State's laws for jurisdictional purposes. Marquette Bus. Credit, Inc. v. Int'l Wood, Inc., No. 08-cv-1383, 2009 WL 825800, at *6 (D. Minn. Mar. 27, 2009) (Ericksen, J.); see also Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1434 (8th Cir. 1995) (holding that a choice-of-law clause may be insufficient standing alone to confer jurisdiction, but when "combined with the other factors, they become wholly relevant and significant."). This is true regardless of whether those clauses apply to the pending dispute, because they evince consent to suit in Minnesota.

The third factor, the connection between the contacts and the case, is also met because the case centers on Defendants' employment relationship with their Minnesota employer. Although many of the underlying facts central to this case occurred in Mexico, the case turns on Defendants' relationship with and contractual obligations to Minnesota-based Land O'Lakes. Thus, there is a direct connection between Defendants' contacts with Minnesota and this case.

10

The Court next considers Minnesota's interest in the litigation, which is a secondary factor in the analysis. Digi-Tel, 89 F.3d at 523. Defendants do not deny that Minnesota has an interest in providing a forum for resident Land O'Lakes. Instead, Defendants argue that such interest is outweighed by the inconvenience to them in litigating in Minnesota rather than in Texas. Where, as here, the defendant has purposely directed his activities to the forum state, he must "present a compelling case" that the forum is so inconvenient as to render jurisdiction "so gravely difficult and inconvenient" that he is "severely disadvantaged" in comparison to his opponent. Gibson Trucking, Inc. v. Allied Waste Indus., Inc., No. 01-cv-710, 2001 WL 1640095, at *6 (D. Minn. Nov. 2, 2001) (Montgomery, J.) (quoting Burger King, 471 U.S. at 478). Defendants have failed to make such a compelling case. Although Defendants claim that litigating in Minnesota will be more challenging than if the case were in their home state of Texas, they have not shown that they would be severely disadvantaged by litigating here. Nor have Defendants shown that Land O'Lakes will have an undue advantage because the case is in Minnesota.

In conclusion, there is nothing random, fortuitous, or attenuated about Defendant's contacts with Minnesota. Defendants have sufficient minimum contacts with Minnesota to meet jurisdictional requirements and they cannot reasonably be surprised to have been haled into court here.

**C.    Viability of Claims**

Defendants next argue that Land O'Lakes has failed to present viable claims for negligence, breach of duty of loyalty, indemnity, and breach of contract.

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**1.   Negligence**

Gonzalez argues that the negligence claim against him is barred by Minn. Stat. § 181.970, which requires an employer to indemnify an employee for acts undertaken in the course of employment. Section 181.970 is inapplicable, however, where the employee engaged in "intentional misconduct, willful neglect . . . or bad faith." Minn. Stat. § 181.970, subd. 1(2). The Amended Complaint specifically alleges that Gonzalez "was guilty of intentional misconduct, willful neglect of the duties of his position and bad faith." (Am. Compl. ¶ 50.) Taking these allegations as true, Land O'Lakes has sufficiently pled a negligence claim against Gonzalez.

**2.   Duty of Loyalty**

Defendants next contend that the duty-of-loyalty claim should be dismissed because Minnesota only recognizes such a claim in the context of unfair competition. Defendants cite

no cases that support this proposition.[2] In the absence of any supporting authority, the Court declines to impose such a limitation on claims for breach of loyalty.

### 3. Indemnity

Defendants also argue that Land O'Lakes does not have a valid indemnity claim because Land O'Lakes entered into the settlements with the Mexican Farmers without consulting them first. For this argument, Defendants rely on Central National Insurance Company of Omaha v. Devonshire Coverage Corporation, 565 F.2d 490, 495 (8th Cir. 1977), which states that in an action for indemnity, "[a]n indemnitee who unilaterally settles a claim against it . . . must . . . establish: (1) at least potential liability, and (2) the reasonableness of the settlement." Id. at 495. The Amended Complaint alleges facts that establish potential liability and that the amount of settlement was reasonable. (Am. Compl. ¶¶ 20-33.) Therefore, Land O'Lakes' indemnification claim is adequately pled.

### 4. Breach of Contract

Finally, Defendants argue that Land O'Lakes cannot maintain its breach-of-contract claim because the ITAs only address inventions and trade secrets, which are not at issue.

As Land O'Lakes responds, however, the ITAs prohibit any conduct "which may create a conflict of interest." (Am. Compl. Exs. A-C ¶ 3C.) Land O'Lakes specifically alleges that Defendants engaged in activities that created a conflict of interest. Whether

---

[2] In ostensible support of this argument, Defendants cite to Rehabilitation Specialists, Inc. v. Koering, 404 N.W.2d 301, 305 (Minn. Ct. App. 1987). Although that case does involve allegations of unfair competition, it does not limit claims for breach of loyalty to such circumstances.

those activities in fact constituted a conflict of interest within the meaning of the ITA is a question for another day. For purposes of this Motion, the claim is viable.

**D.    Motion to Transfer**

Defendants argue that if the case is not dismissed, it should be transferred to the Southern District of Texas under 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[3] 28 U.S.C. § 1404(a). The statute mandates three factors for a court to consider when determining whether transfer is appropriate: (1) the convenience of parties; (2) the convenience of witnesses; and (3) the interests of justice. However, a court is not limited to considering only these three factors, because transfer determinations "require a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." Terra Int'l, Inc. v. Mississippi Chem. Corp., 119 F.3d 688, 691 (8th Cir. 1997).

The statutory factors do not support transfer of the case to Texas. Defendants argue that the case should be transferred because they are in Texas and because Land O'Lakes is a billion-dollar company that can afford to litigate anywhere. "To prevail on a motion to transfer, the movant must show that his inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred." Oien v. Thompson, 824 F. Supp. 2d 898, 903 (D. Minn. 2010) (Tunheim, J.). Defendants have not met this burden.

---

[3] It is undisputed that case could have been brought in the Southern District of Texas.

14

Defendants claim that they will be inconvenienced by having to litigate in Minnesota because they are running a small business in Texas which would suffer if they were required to spend extended periods of time in Minnesota.  They do not claim that they are financially unable to defend the case in Minnesota.  As a practical matter, however, other than for trial, Defendants are unlikely to have to spend an "extended" amount of time in Minnesota for purposes of this case.  Discovery and motion practice can proceed with Defendants in Texas, and the Court trusts that the parties will schedule depositions in locations convenient to the parties and witnesses.  This factor weighs in favor of maintaining venue in Minnesota.

Defendants also argue that it would be more convenient for the witnesses if the case were venued in Texas because four of the possible witnesses are located in Texas. (Gonzalez Aff. (Docket No. 19) ¶¶ 14a-d.)  Notably, however, Defendants also identify ten other potential witnesses who are in Mexico, Indiana, and Ohio, and who would be inconvenienced whether the case is venued in Minnesota or Texas.  (Id. ¶¶ 14e-h.)  Land O'Lakes in turn has identified six Land O'Lakes employees and three non-party witnesses who would be inconvenienced were the case transferred to Texas. (Conrad Aff. (Docket No. 21) ¶ 28.) The convenience of the witnesses weighs strongly in favor of keeping the case in Minnesota.

The last factor, the interests of justice, also does not support transfer.  This factor includes an analysis of the plaintiff's choice of forum, the law applicable to the case, the ability of the parties to bear the costs of litigation, the connection between the litigation and the forum, any obstacles to a fair trial, and the Court's ability to enforce a judgment.  Terra, 119 F.3d at 696.  On balance, the interests of justice weigh in favor of keeping the case here.

The parties generally agreed to litigate in Land O'Lakes' chosen forum, Minnesota law appears to apply, there is a connection between the litigation and the forum, there is no obstacle to a fair trial, and the Court's judgment will be enforceable in Texas as well as Minnesota. In sum, the § 1404(a) factors do not support transfer of this case to Texas.

**CONCLUSION**

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss or, alternatively to Transfer Venue (Docket No. 12) is **DENIED**;

2. Plaintiff's Motion to Strike (Docket No. 34) is **DENIED**; and

3. Plaintiff has 14 days from the date of this Order to file a Second Amended Complaint that incorporates the assignments from Agriliance, Winfield, and Winfield Mexico.

Dated: <u>September 30, 2013</u>

<u>*s/ Paul A. Magnuson*</u>
Paul A. Magnuson
United States District Court Judge